UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ZERO CLOUD ONE INTELLIGENT TECHNOLOGY (HANGZHOU) CO. LTD., <br><br> Plaintiff, <br><br> v. <br><br> FLYING HELIBALL LLC; WORLD TECH TOYS, INC. <br><br> Defendants. | CASE NO. 2:24-cv-01699-JNW <br><br> ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER |

## 1. INTRODUCTION

This matter comes before the Court on Plaintiff Zero Cloud Intelligent Technology (Hangzhou) Co. Ltd.'s ("Zero Cloud") Motion for a Temporary Restraining Order (TRO) and Preliminary Injunction against Defendants Flying Heliball, LLC ("Flying Heliball") and World Tech Toys, Inc. ("World Tech Toys"). Dkt. No. 7. Zero Cloud seeks an injunction ordering Defendants to retract their "takedown" requests to Amazon regarding Zero Cloud's HOVERAir X1 products and to abandon further takedown actions based on Defendants' so-called bad-faith patent infringement claims. *Id.* at 30. Having closely reviewed the parties' briefing,

the law, and the record, and having held a hearing on the matter, *see* Dkt. No. 19, the Court DENIES the motion because Zero Cloud fails to demonstrate a likelihood of success on the merits and irreparable harm.

## 2.  FINDINGS OF FACT[1]

This action centers on U.S. Patent 7,100,866 ("the '866 Patent"). Defendant World Tech Toys is the owner and exclusive licensee of the patent, and Defendant Flying Heliball licenses the patent from World Tech Toys. Dkt. No. 8 at 2.

As described in its abstract, the '866 Patent comprises an integrated system of several components: a "vehicle having a propeller mechanism"; a "transmitter positioned on the bottom of the vehicle for transmitting a signal from the vehicle downwardly away from the vehicle"; a "receiver… positioned on the bottom of the vehicle for receiving the signal as it is bounced off of a surface"; and a "control system" that "automatically sets the speed of the propeller mechanism in response to the receiver." Dkt. No. 1-1 at 2. The abstract explains how these components interact:

> "The control system sets the speed of the propeller mechanism to a first speed when the receiver receives the bounced signal[,] and the control system sets the speed of the propeller mechanism to a second speed when the receiver does not receive the bounced signal. The first speed is predefined as a speed that causes the vehicle to gain altitude, while the second speed is predefined as a speed that causes the vehicle to lose altitude. When the vehicle reaches a predetermined distance away from the surface of the object, the vehicle will hover at the predetermined distance as the control system toggles between the first and second speeds."

---

[1] Findings of fact and conclusions of law made in connection with a temporary restraining order are not binding adjudications. *Hordphag Rsch. Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007). The Court may come to different, perhaps even opposite, conclusions as the case advances.

ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER - 2

*Id.*

On March 28, 2024, Flying Heliball sent a letter to Zero Zero Robotics, Inc. ("Zero Zero") asserting that Zero Zero and its "corporate partners" were infringing on the '866 Patent by selling the HOVER Air X1 product. *Id.* at 143-145. Zero Cloud, which sells the HOVER Air X1 product in the United States via Amazon, self-identifies as one of the "corporate partners" targeted by the letter. *See* Dkt. No. 1 at 22.

The letter, which included a claims chart, gave Zero Zero until April 12 to "discuss a possible license." Dkt. No. 1-1 at 143-145. It also described the patent's history of enforcement litigation, asserting that "[i]n every case brought by Heliball and its predecessors, the '866 Patent has been found valid and infringed." *Id.*

The product at issue—the HOVER Air X1—is a propellor-powered camera drone that produces airborne video footage while using multiple sensor systems to detect its environment to avoid collisions. *See* Dkt. No. 1-1 at 132. According to Zero Cloud, these sensor systems include: (1) a camera system that takes and analyzes digital photographs to determine the unit's speed and position ("Visual Inertial Odometry" system or "VIO"); (2) a barometer; and (3) a system that determines the unit's relative height by (a) transmitting an infrared light from a light-emitting diode (LED) facing downwards, (b) using a photodiode on the device to detect the same infrared light when it is reflected from the surface below, and (c) comparing the transmitted light signal with the received light signal to compute the device's

estimated distance from the reflecting surface ("Time-of-Flight sensor" or "ToF"). Dkt. No. 1 at 16-17.[2]

On April 10, 2024, Zero Zero responded to Flying Heliball's demand letter, asking for more specific claim charts explaining how the HOVER Air X1 infringed the patent. *See* Dkt. No. 1-1 at 220. On May 1, Flying Heliball responded, stating the basis of the alleged infringement and attaching claim charts and constructions. *Id.* at 220-231. These documents invoked Claims 10 and 11 of the '866 Patent. *Id.*

In late July, the parties met to discuss the matter. *Id.* at 180-183. That conversation failed to resolve the dispute. On August 21, 2024, Flying Heliball filed a patent infringement action against Zero Zero in the U.S. District Court for the Central District of California, alleging that the Hover Air X1 infringed Claims 1 and 10 of the '866 Patent. *Flying Heliball, LLC v. Zero Zero Robotics, Inc.*, No. 8:24-cv-1838 (C.D. Cal.); *see* Dkt. No. 1-1 at 185-193 (Complaint).

The next day, Flying Heliball sent a letter informing Zero Zero of the lawsuit and offering Zero Zero a "non-exclusive license with a ten percent (10%) royalty rate on all past sales paid upfront as well as a continuing non-exclusive license on all future sales up through the expiration of the '866 Patent." Dkt. No. 1-1 at 129-30. The letter stated Flying Heliball's understanding that Zero Zero had access to "minimal channels of trade" and that "Amazon and Shopify have sole discretion regarding the products they list and a streamlined procedure for removing or

---

[2] Zero Cloud makes these representations in the Complaint, but provides no evidentiary support on the record. As a result, these findings of fact are taken on information and belief and considered merely provisional.

otherwise barring the sale of products that are alleged in litigation to infringe another's patent." *Id.* The letter gave Zero Zero until August 28 to "confirm its willingness to enter into a license agreement," or else Flying Heliball would act to effect "immediate cessation of any further infringing sales." *Id.*

On August 28, Flying Heliball submitted an online Amazon form reporting 44 Amazon Serial Identification Numbers (ASINs) associated with Zero Cloud's products as infringing. Dkt. No. 16-2 at 117. This form is publicly available on Amazon's website. *See* Dkt. No. 1-1 at 41. Following an internal process, Amazon contacted Flying Heliball on September 24, stating that it had "reviewed your report and removed the infringing content" for the reported ASINs. Dkt. No. 16-2 at 121, 123. On or around September 25, Amazon sent Zero Cloud a takedown notice, explaining that Amazon had de-listed multiple Zero Cloud products "because we received a report from a rights owner alleging they may infringe upon their patent." Dkt. No. 1-1 at 59. This takedown notice did not explain the basis of alleged infringement. *Id.*

Not all HOVER Air X1 ASINs were removed from Amazon; according to Zero Cloud, the ASINs that were removed were the "legacy, high-traffic" ASINs with a "history of success" and "large numbers of positive consumer ratings and comments." Dkt. No. 9 at 7. The remaining product listings "do not have the high ratings and other benefits that the legacy ASINs earned and accumulated since launch of the product last year." *Id.* Due to removal of the legacy listings, Zero Cloud alleges that it has suffered loss of customer goodwill, diminished access to new customers, loss of positive online comments and reviews on its product listings,

diminished search and product rankings, reputational loss, removal from Amazon's Fulfillment by Amazon (FBA) and Prime Benefits programs, and loss of revenue during the holiday season, among other possible negative impacts to the business. *Id.* at 7-15. Amazon is the only sales channel through which Zero Cloud sells its products; Zero Cloud receives over half of its revenue from United States sales of the HOVER Air X1 on Amazon. *Id.* at 9.

On September 30, 2024, Zero Zero wrote to Flying Heliball, seeking to meet and confer regarding Zero Zero's planned motions to dismiss and for Rule 11 sanctions in the Central District of California litigation. Dkt. No. 1-1 at 233-236. The letter asserted that the patent infringement theory in the complaint was "absurd" because it falsely characterized the HOVER Air X1's VIO camera as a "transmitter." *Id.* The letter explained that the product's VIO and ToF systems are "substantially different from the Patent's 'transmitter/receiver pair'" because "[t]hey both always <u>must receive</u> light to work, but the Patent relies on <u>both</u> receiving and <u>not receiving</u> reflected light to work." *Id.* (emphasis in original). The letter demanded retraction of the Amazon takedown request. *Id.*

On October 2, the parties met and conferred and Flying Heliball's counsel admitted that the HOVER Air X1 camera is neither a "transmitter" nor "receiver" within the meaning of the '866 Patent. *See* Dkt. No. 1-1 at 241. Two days later, Flying Heliball wrote to Zero Zero requesting consent to file an amended complaint abandoning the erroneous assertions about the camera and focusing instead on the HOVER Air X1's "LiDAR system as the transmitter and receiver of a signal for the asserted claims." *Id.* On October 16, the parties met and conferred and could not

ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER - 6

agree on language for the amended complaint. Dkt. No. 16-2 at 352. Flying Heliball moved for leave to file an amended complaint—the motion remains pending as of this time. *Id.* at 364-65.

Zero Cloud now seeks a TRO and preliminary injunction ordering Defendants to submit a retraction of their patent infringement notices and takedown requests to Amazon regarding the '866 patent and ordering them *not* to initiate further takedown actions based on the alleged infringement of the patent. Dkt. No. 7-1 at 4–5.

### 3. CONCLUSIONS OF LAW

#### 3.1 Legal Standard.

The legal standard for a TRO is the same as that for a preliminary injunction. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). TROs and preliminary injunctions are "extraordinary remed[ies] that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). "[A] plaintiff seeking a preliminary injunction must make a clear showing that '[they are] likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest.'" *Starbucks Corp. v. McKinney*, 144 S. Ct. 1570, 1576 (2024) (quoting *Winter*, 555 U.S. at 20). These four elements—the *Winter* factors—apply whenever a preliminary injunction is sought. *Winter*, 555 U.S. at 20. To obtain relief, a plaintiff must "make a showing on all four prongs." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135. (9th Cir. 2011)

Injunctive relief can take two forms: prohibitory and mandatory. "A prohibitory injunction prohibits a party from taking action," while "[a] mandatory injunction orders a responsible party to take action." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878-79 (9th Cir. 2009) (internal quotation marks omitted). Zero Cloud's primary request is an order commanding Flying Heliball and World Tech Toys to retract the takedown request sent to Amazon. The Court construes this as a request for a mandatory injunction, so Zero Cloud "must establish that the law and facts *clearly favor* [its] position, not simply that [it] is likely to succeed." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (emphasis in original). Courts do not issue mandatory injunctions in "doubtful cases." *Id.* (quoting *Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Tr.*, 636 F.3d 1150, 1160 (9th Cir.2011)); *see also Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017) (quoting *Marlyn Nutraceuticals*, 571 F.3d at 879) ("Mandatory injunctions, while subject to a higher standard than prohibitory injunctions, are permissible when 'extreme or very serious damage will result' that is not 'capable of compensation in damages,' and the merits of the case are not 'doubtful.'").

## 3.2   The Court has personal jurisdiction over Defendants.

Defendants argue the Court lacks personal jurisdiction over them. A court may only grant injunctive relief, of course, if it has personal jurisdiction over the defendants. *Paccar Intern., Inc. v. Com. Bank of Kuwait, S.A.K.*, 757 F.2d 1058, 1061 (9th Cir. 1985). "The general rule is that personal jurisdiction over a defendant is proper if permitted by a long-arm statute and if the exercise of that jurisdiction

does not violate federal due process." *Pebble Beach v. Caddy*, 453 F.3d 1151, 1154–55 (9th Cir. 2005). Because the Washington long-arm statute is coextensive with federal constitutional limits, *see* RCW 4.28.185, the Court need only address the due-process prong of the rule.

To satisfy due process, a defendant must have sufficient minimum contacts with the forum such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Pebble Beach*, 453 F.3d at 1155 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 315 (1945)). Where, as here, a plaintiff asserts specific, not general, personal jurisdiction, three requirements must be met: (1) the non-resident defendant must purposefully direct activities at the forum, or purposefully avail themself of the privilege of conducting activities in the forum; (2) the claim must arise out of, or relate to, the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice. *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). The plaintiff has the burden of satisfying the first two prongs; the burden then shifts to the defendant to show jurisdiction is unreasonable under the third prong. *Id.* at 1211-12.

Because Zero Cloud's PTPA and business interference claims sound in tort, the "purposeful direction" test applies when evaluating the first prong. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). This test, known as the *Calder* effects test, requires that "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Mavrix Photo, Inc. v. Brand Tech., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) (citing

*Calder v. Jones*, 465 U.S. 783 (1984)). "The 'brunt' of the harm need not be suffered in the forum state. If a jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter that even more harm might have been suffered in another state." *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1207 (9th Cir. 2006).

Zero Cloud alleges that Flying Heliball and World Tech Toys "purposely direct[ed] activity in this forum by initiating and participating in Seattle-based Amazon's product takedown process[.]" Dkt. No. 7 at 16-17. Arguing to the contrary, Defendants claim that Flying Heliball's takedown notice was directed at California ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *See* Dkt. No. 17-2 at 1-2 (settlement agreement). This argument is unavailing. Under the procedure set forth in the settlement agreement, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. This is purposefully directed action in the forum. Thus, the Court finds

ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER - 10

that Zero Cloud's allegation satisfies the first and second elements of the *Calder* effects test.[3]

As for the third element of the *Calder* effects test, Zero Cloud alleges that Flying Heliball and World Tech Toy's takedown action was intended to "harm Zero Cloud's sales of HOVERAir X1 in this forum[.]" Dkt. No. 7 at 17. This is true in a double sense. First, Zero Cloud's sales are based in this forum considering that Amazon, headquartered in Seattle, is the only channel through which Zero Cloud sells the HOVER Air X1. Dkt. No. 9 at 9. Flying Heliball and World Tech Toys were fully aware of Zero Cloud's dependence on Amazon. *See* Dkt. No. 1-1 at 129-30 (threat letter stating Flying Heliball's understanding that Zero Cloud has "minimal channels of trade"). Flying Heliball and World Tech Toys thus intended to deprive Zero Cloud of its Washington-based sales platform. Second, and relatedly, Zero Cloud alleges that the product takedown foreseeably affected its ability to sell its product within Washington, to Washington-based consumers. Dkt. No. 7 at 17. These allegations are more than enough to satisfy the third prong of the *Calder* effects test. *See SnapPower v. Lighting Def. Grp.*, 100 F.4th 1371, 1373-78 (Fed. Cir. 2024) (finding specific personal jurisdiction in Utah where defendant sent

---

[3] *See Cal. Beach Co., LLC v. Han Xian Du*, 2020 WL 6276987, at *4 (N.D. Cal. Aug. 13, 2020), *report and recommendation adopted*, 2020 WL 6271225 (N.D. Cal. Oct. 26, 2020) (finding personal jurisdiction in California based on defendant "submit[ting] the takedown notices to Facebook and Instagram, which are located in the Northern District of California"); *Automattic Inc. v. Steiner*, 82 F. Supp. 3d 1011, 1023 (N.D. Cal. 2015) ("Here, the intentional act element is satisfied because Defendant acted intentionally when he sent takedown notices to [California-based company] Automattic."); *Amaretto Ranch Breedables v. Ozimals*, 2010 WL 5387774, at *1 (N.D. Cal. Dec. 21, 2010) (finding personal jurisdiction in California because "Defendant filed a DMCA Takedown Notification with a California company").

ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER - 11

infringement notice to Amazon in Washington "intending effects which would be felt in Utah"); *see also Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1068 (10th Cir. 2008). Because all three elements of the *Calder* effects test are met, the first prong of specific personal jurisdiction is satisfied.

The second and third prongs are satisfied as well. Zero Cloud's claims relate to, and arise directly from, Flying Heliball and World Tech Toys' action asserting patent infringement to Washington-based Amazon. And Flying Heliball and World Tech Toys do not show why this Court's exercise of jurisdiction is unfair or unreasonable.

Defendants argue, however, that—even if the Court has specific personal jurisdiction over Flying Heliball, which initiated the takedown—Zero Cloud does not adequately allege facts to establish specific personal jurisdiction over World Tech Toys. The Court disagrees. Courts of equity may not bind "persons who act independently and whose rights have not been adjudged according to law." *Regal Knitwear Co. v. N.L.R.B.*, 324 U.S. 9, 13 (1945). But World Tech Toys, as alleged, does not act independently. The Complaint asserts that Flying Heliball and World Tech Toys have the same registered address, the same registered agent, and the same CEO. Dkt. No. 1 at 3-4. The Complaint also asserts that World Tech Toys is the exclusive licensee of the '866 Patent. *Id.* As a result, "Flying Heliball cannot grant someone else a license under the '866 Patent without authorization from World Tech Toys." *Id.* In other words, the licensing offers in Flying Heliball's demand letters to Zero Zero imply action not by Flying Heliball, but by World Tech Toys. The Complaint plausibly concludes that "World Tech Toys and Flying Heliball

ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER - 12

act in concert in enforcing the '866 Patent through litigation, licensing or otherwise." *Id.*; *see also* Fed. R. Civ. P. 65(d)(2)(C) (a TRO or preliminary injunction may bind "persons who are in active concert or participation" with parties); *Lynch v. Rank*, 639 F. Supp. 69, 71-75 (N.D. Cal. 1985) (analyzing relation between Rule 65(d)(2)(C) and personal jurisdiction).

The Court therefore concludes that Zero Cloud has adequately established—or at least established with reasonable probability[4]—the Court's specific personal jurisdiction over Flying Heliball and World Tech Toys for purposes of the requested relief.

### 3.3   Zero Cloud fails to demonstrate a clear likelihood of success on the merits.

The first *Winter* factor, "[l]ikelihood of success on the merits[,] is the most important factor[.]" *Edge v. City of Everett*, 929 F.3d 657, 663 (9th Cir. 2019).

---

[4] A plaintiff seeking a TRO or preliminary injunction may survive a jurisdictional challenge when the plaintiff "'adequately establish[es] that there is at least a reasonable probability of ultimate success upon the question of jurisdiction when the action is tried on the merits.'" *AVACEN, Inc. v. NuLife Ventures, LLC*, No. 20-CV-1459-WQH-AHG, 2020 WL 13579361, at *4 (S.D. Cal. Sept. 3, 2020) (quoting *Enter. Intern., Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 471 (5th Cir.1985)); *see also Boschetto v. Hansing,* 539 F.3d 1011, 1015 (9th Cir. 2008) ("Absent an evidentiary hearing, this court 'only inquire[s] into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction.'") (alterations in original) (quoting *Caruth v. Int'l Psychoanalytical Ass'n,* 59 F.3d 126, 127-28 (9th Cir. 1995)); *Zango, Inc. v. PC Tools Pty Ltd.*, 494 F. Supp. 2d 1189, 1194 (W.D. Wash. 2007) ("[T]he Court finds that there is a reasonable probability that the Court has personal jurisdiction over Defendant due to the continuous and systemic business activity it conducts in the forum state.").

Zero Cloud alleges that Defendants violated the Patent Troll Prevention Act, RCW 19.350 *et seq.*, by making bad-faith assertions that the HOVER Air X1 products infringe the '866 Patent. Dkt. No. 1 at 31-33. As alleged, Defendants made these bad-faith assertions both in their demand letters to Zero Zero and their infringement notice and related communications to Amazon. *Id.* Zero Cloud also alleges that Defendants committed tortious interference with Zero Cloud's relationship and business expectancies with Amazon and with customers who, but for Defendants' bad-faith infringement assertions, would have otherwise bought the HOVER Air X1 products on Amazon. *Id.* at 33-34.

Even setting aside the specific elements necessary to establish these claims, the Court notes that Zero Cloud must survive federal preemption to succeed on the merits. As the Federal Circuit explained in *Globetrotter*:

> "[F]ederal patent law preempts state-law tort liability for a patentholder's good faith conduct in communications asserting infringement of its patent and warning about potential litigation. *See, e.g., Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1355 (Fed. Cir. 1999). State-law claims… can survive federal preemption only to the extent that those claims are based on a showing of 'bad faith' action in asserting infringement. *Id.* Accordingly, to avoid preemption, "bad faith must be alleged and ultimately proven, even if bad faith is not otherwise an element of the tort claim." *Id.*

*Globetrotter Software, Inc. v. Elan Comput. Grp., Inc.*, 362 F.3d 1367, 1374 (Fed. Cir. 2004). In short, "[t]he federal patent laws thus bar state-law liability for communications concerning alleged infringement so long as those communications are not made in 'bad faith.'" *Id.* at 1374-75. Under this federal preemption doctrine, to establish that an assertion of patent infringement was made in bad faith—and therefore can survive preemption—a plaintiff must prove by clear and convincing

evidence that the infringement assertion is both (1) "objectively baseless," and (2) made in "subjective bad faith." *Id.* at 1377, 1367 n.8; *see also Washington v. Landmark Tech. A, LLC*, 637 F. Supp. 3d 1154, 1162 (W.D. Wash. 2022) (construing the Washington Patent Troll Prevention Act in light of federal preemption doctrine to require a clear and convincing showing of objective baselessness and subjective bad faith).

Zero Cloud makes a plausible case that—on a more developed evidentiary record—it will clear these hurdles. On its face, the '866 Patent describes a simply binary system: if the device's receptor receives the bounced-back light signal, its propellers spin such that the device gains altitude; if not, the propellers spin such that the device loses altitude. By contrast, Zero Cloud alleges that the HOVER Air X1 utilizes far more sophisticated means of environmental detection. Zero Cloud also alleges that throughout its dispute with Flying Heliball, Flying Heliball has repeatedly concealed and altered its theory of infringement, suggesting subjective bad faith. At oral argument, Zero Cloud emphasized that Flying Heliball has expressly admitted that the initial complaint in its enforcement action against Zero Zero erroneously characterized the HOVER Air X1's VIO camera system as a "transmitter" within the meaning of the '866 Patent; yet despite this admission, Flying Heliball has not retracted the Amazon takedown notice incorporating this abandoned infringement theory.

But on the evidentiary record before the Court, Zero Cloud has not made the requisite clear showing that Flying Heliball's assertion of patent infringement is both objectively baseless and subjectively bad-faith. Despite abandoning its theory

that the HOVER Air X1 camera is a "transmitter" within the meaning of the '866 Patent, Flying Heliball and World Tech Toys remain steadfast in their infringement claims. In the Central District of California litigation, Flying Heliball has moved for leave to amend its complaint to clarify an infringement theory based on the HOVER Air X1's "LiDAR system as the transmitter and receiver of a signal for the asserted claims." Dkt. No. 1-1 at 241. Zero Cloud provides this Court with almost no evidence about the technical operations of the HOVER Air X1; yet it does tell the Court that the device's "ToF system" detects the device's environment through emission and subsequent reception of infrared light. Dkt. No. 1 at 17. On the record presently available—and without an evidentiary hearing and a reasoned construction of the '866 Patent—the Court cannot conclude that this ToF system is non-infringing, let alone that Flying Heliball's infringement theories (whether the initial theory or the revised theory) meet the criteria of objective baselessness and subjective bad faith. Thus, Zero Cloud fails to demonstrate a clear likelihood of success on the merits— the "most important factor" for preliminary injunctive relief. *See Edge*, 929 F.3d at 663.

### 3.4 Zero Cloud fails to demonstrate a clear likelihood of irreparable harm absent preliminary injunctive relief.

Zero Cloud argues that, absent immediate injunctive relief, it will suffer several forms of irreparable harm because of the Amazon takedown: (1) loss of the consumer goodwill generated by past sales; (2) lost ability to reach customers using the legacy Prime-eligible ASINs under Amazon's FBA program; (3) loss of the rankings, positive comments, and reviews on its product listings; (4) reputational

loss in the technology industry; and (5) loss of revenue during the holiday shopping season. Dkt. No. 7 at 24-28; *see generally* Dkt. No. 9.

It is true that reputational harm, loss of customer goodwill, and threatened loss of prospective customers can sometimes support a finding of irreparable harm. *See, e.g., Stuhlbarg Int'l Sales Co.*, 240 F.3d at 841; *Herb Reed Enterprises, LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013); *adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 756 (9th Cir. 2018); *Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991). Indeed, in multiple cases involving product de-listings resulting from assertions of intellectual property infringement, courts have found sufficient irreparable harm to grant preliminary injunctive relief. *See, e.g., Medcursor Inc. v. Shenzen KLM Internet Trading Co.*, 543 F. Supp. 3d 866 (C.D. Cal. 2021); *Beyond Blond Prods. v. Heldman*, 479 F. Supp. 3d 874, 888 (C.D. Cal. 2020). Such findings are particularly warranted where the evidence indicates that the plaintiff is likely to go out of business absent immediate relief—which does *not* appear to be the case here. *See Medcursor*, 543 F. Supp. 3d at 878.

Zero Cloud has proffered evidence that its sales have suffered from the Amazon takedown. *See generally* Dkt. No. 9 (declaration from Zero Cloud's Director of Ecommerce). But it is less clear whether Zero Cloud faces irreparable harm that cannot be cured with monetary damages—no matter how technically complex such damage calculation may be. The gist of the alleged harm to Zero Cloud is past and future lost sales. "Purely economic harms are generally not irreparable, as money lost may be recovered later, in the ordinary course of litigation." *Idaho v. Coeur*

ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER - 17

*d'Alene Tribe*, 794 F.3d 1039, 1046 (9th Cir. 2015) (citing *Sampson v. Murray*, 415 U.S. 61, 61–62, 89–92 (1974)).

Zero Cloud states that the "continued product takedown will cause Zero Cloud to miss the limited window of opportunity to market and sell the HOVERAirX1 during the upcoming holiday season and excitement from launch of new higher-end professional HOVERAir X1 PRO products," which "was expected to generate a surge in interest in the standard HOVERAir X1 itself[.]" Dkt. No. 7 at 25-26. This assertion does not sway the Court. Besides finding the core of the alleged harm to be economic, the Court views these claims about lost future sales as speculative. "Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988). This is especially the case here, given that the evidence before the Court suggests that Zero Cloud is still able to sell its HOVER Air X1 products on Amazon; only its so-called legacy listings, i.e., those with the greatest amount of consumer traction, have been taken down.

Given that Zero Cloud has fallen short of the requisite showing on the merits of its claims (*see supra* § 3.3)—and given that mandatory injunctions are appropriate only when a plaintiff faces "extreme or very serious damage" that is not "capable of compensation" (*see Hernandez*, 872 F.3d at 999)—the Court concludes that Zero Cloud has failed to demonstrate the clear likelihood of irreparable harm necessary to justify the extraordinary relief of a TRO or preliminary injunction.

### 3.5 The balance of equities do not clearly favor preliminary injunctive relief.

Finally, the Court considers the balance of equities. Zero Cloud alleges that the balance of equities favors relief because Flying Heliball and World Tech Toys will not be irreparably harmed by the retraction of their false, bad-faith takedown notice. But if the HOVER Air X1 is, indeed, infringing, then the balance of equities is reversed: forcing Flying Heliball and World Tech Toys to take affirmative action inducing the *re*-listing of the infringing products would be inequitable. Therefore, this factor does not clearly compel injunctive relief.

### 4. CONCLUSION

On the evidentiary record before the Court, the Court concludes that Zero Cloud has failed to satisfy its burden of meeting all four *Winter* factors. Zero Cloud's Motion for Temporary Restraining Order and Preliminary Injunction, Dkt. No. 7, is therefore DENIED.

That said, the Court notes that this conclusion about the appropriateness of preliminary injunctive relief may plausibly differ with the development a more complete evidentiary record. As discussed above, Zero Cloud's likelihood of success on the merits hinges largely on whether Flying Heliball and World Tech Toys' patent infringement assertion is in bad faith. That determination is linked to the issue of actual infringement, which is currently being litigated in the Central District of California. Perhaps, then, the most fair and efficient means of assessing the merits of Zero Cloud's claims is to stay this action while that parallel case proceeds, at least through the pleading stage. Or perhaps the most fair and efficient

means of adjudicating this case is to set a preliminary injunction hearing with an attendant briefing schedule, to accept and evaluate evidence on the issues of objective infringement and subjective bad faith, and to thereby develop greater clarity on the likelihood of success on the merits of Zero Cloud's Washington state-law claims.

The Court therefore ORDERS the parties to submit supplemental briefing to the Court, not to exceed SIX (6) pages, regarding the optimal case management approach within SEVEN (7) DAYS of the date of this Order. This briefing should address the application, if any, of the first-to-file rule on this action. *See Kohn L. Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237 (9th Cir. 2015).

It is so ORDERED.

Dated this 4th day of November, 2024.

Jamal N. Whitehead
United States District Judge